Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, January 22, 2007 3:58:44 PM

# THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DANIEL PAUL COOK, | ) | Case No 05-3965 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WALTERS CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 05-231 |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL PAUL COOK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Walters Construction, Inc. ("Walters Construction"), filed this adversary proceeding against Daniel Paul Cook (the "Debtor") to except an alleged $17,000 debt from his Chapter 7 discharge pursuant to § 523(a)(2)(A) and/or (B) of the Bankruptcy Code. Walters Construction asserts that the Debtor was responsible for certifying the weekly payroll records of its subcontractor, Cook Heating and Air Conditioning, Inc. ("Cook Heating"),[1] on a job subject to federal regulation under the Davis-Bacon Act. Because Cook Heating did not pay all of its workers' fringe benefits as certified, Walters Construction asserts that it is being held liable for Cook Heating's fringe benefit underpayment. The Debtor argues that

---

[1] Cook Heating filed a Chapter 7 bankruptcy petition in this District on September 12, 2005 (Case No. 05-3964).

the facts of this case do not meet the exception to discharge standards of § 523(a)(2), that the actual underpayment of fringe benefits is far less than $17,000, and that any amount owed to Walters Construction is subject to being setoff by debts that Walters Construction owes to Cook Heating.

The court held a trial in this case in Wheeling, West Virginia on December 12, 2006, at which time the court took the matter under advisement. For the reasons stated herein the court will deny the relief sought in Walters Construction's complaint.

## I. BACKGROUND

The United States Department of Housing and Urban Development ("HUD") sponsored construction of the Hope VI North Wheeling housing development in Wheeling, West Virginia ("Hope VI"), which is being administered by the Wheeling Housing Authority ("WHA"). Walters Construction contracted with the WHA to supply materials and services in connection with the construction of Hope VI, and it subcontracted the plumbing and the heating, ventilating, and air-conditioning work to Cook Heating. To be able to work on the Hope VI project, Cook Heating agreed to pay its workers fringe benefits in an amount equal or exceeding that required by the Davis-Bacon Act, which was $2.50 per hour. The Debtor is the president of Cook Heating, and the job on the Hope VI project was Cook Heating's first job using union labor.

During the course of Cook Heating's work, pursuant to HUD regulations, it certified its weekly payroll on a form entitled "Statement of Compliance," which it sent to Walters Construction. The Statement of Compliance form was prepared by the United States Department of Labor, Wage and Hour Division. The Debtor allowed these weekly forms to be signed by Cook Heating's office staff who were not officers of the corporation. In nearly all the forms, Cook Heating represented that its workers' fringe benefits were paid in cash in "an amount not less than the sum of the applicable basic hourly wage rate plus the amount of the required fringe benefits as listed in the contract." The Debtor testified that he reviewed some, but not all of the Statement of Compliance forms that Cook Heating submitted to Walters Construction.

Walters Construction alleges that Cook Heating was unable to perform its subcontract satisfactorily, and that Walters Construction was forced to complete a portion of the limited excavation work delegated to Cook Heating. For that service, Walters Construction billed Cook Heating about

-2-

$40,000. Cook Heating made some payments to Walters Construction for performing the work, but a large portion of bill remains unpaid. Glenn Walters stated that Walters Construction is withholding about $30,000 due to Cook Heating for work Cook Heating performed on the Hope VI project, which it plans to use as a setoff for the amount that Cook Heating owes to it for the excavation work.

In July 2004, HUD's Pittsburgh, Pennsylvania field office made a site visit to the WHA for the purpose of auditing the Hope VI project. Part of that audit focused on whether or not employers were following the proper wage procedures in connection with the expenditure of federal funds. On July 28, 2004, the WHA informed Walters Construction that Cook Heating had failed to pay some of its workers' fringe benefits – dating back to March 2002 – in an amount required by the Davis Bacon Act. In total, the HUD audit concluded that Cook Heating owed its workers $17,056.90. On August 6, 2004, Walters Construction informed Cook Heating of the audit findings and requested that Cook Heating make the required wage restitution.

Cook Heating did not respond to Walters Construction's August 6, 2004 request, or to a follow-up letter from Walters Construction on October 20, 2004. On November 3, 2004, the WHA wrote Cook Heating directly, requesting a response on the findings of the HUD audit. When the WHA did not receive any response, it sent a notice to the Debtor and Cook Heating on February 8, 2005, informing them that they owed a back wage liability of $17,056.90, and that they had 30 days to file an appeal of the finding. Neither the Debtor nor Cook Heating ever appealed that finding.

Pursuant to HUD regulations, the WHA is withholding about $21,000 due to Walters Construction until such time as its subcontractor, Cook Heating, remedies the violations noticed in the WHA's back wage liability determination.[2]

### III. DISCUSSION

Walters Construction argues that Cook Heating submitted false payroll certifications to it on the basis that Cook Heating certified that its workers' fringe benefits were paid in cash when HUD had

---

[2] *See* 29 C.F.R. § 5.5(a)(2) ("In the event of a failure to pay any laborer . . . all or part of the wages required by the contract, the (Agency) may . . . take such action as may be necessary to cause the suspension of any further payment . . . until such violations have ceased.").

-3-

determined that no such cash payments were made. Walters Construction asserts that the Debtor is personally liable for the false certification as the president of Cook Heating.[3] Even if the Debtor did not act to intentionally defraud Walters Construction, it asserts that the Debtor's actions in this case evidence a reckless disregard for the truth, which is the equivalent of an intent to defraud.

Section 523(a)(2) of the Bankruptcy Code provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

. . .

(2) for money . . . to the extent obtained, by--
    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
    (B) use of a statement in writing--
        (i) that is materially false;
        (ii) respecting the debtor's or an insider's financial condition;
        (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied;
        (iv) that the debtor caused to be made or published with intent to deceive
. . . .

§ 523(a)(2)(A-B).[4]

"False pretenses," "false representation," and "actual fraud" are terms of art defined by the general common law of torts, and are not defined by the law of any particular State. *Field v. Mans*, 516 U.S. 59, 71 n.9 (1995). Whether a creditor alleges a cause of action under 11 U.S.C. § 523(a)(2)(A) or (B), an

---

[3] The parties do not dispute that the Debtor, as the president of Cook Heating, is personally liable for any unpaid fringe benefits owed to Cook Heating's employees. *See, e.g.*, *Mullins v. Venable*, 297 S.E.2d 866, (W. Va. 1982) ("We therefore hold that an officer in the management of a corporation who knowingly permits the corporation to violate the provisions of the Wage Payment and Collection Act may be held personally liable . . . .").

[4] Because the court finds that Walters Construction failed to establish that the Debtor acted with the requisite intent to deceive it, the court will not address the other elements necessary to prove a cause of action under either § 523(a)(2)(A) or (B). *See In re Biondo*, 180 F.3d 126, 134 (4th Cir. 1999) (stating that under § 523(a)(2)(A) a creditor must show: "(1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation.").

essential element of both subsections is that the debtor have acted with the intent to deceive the creditor. *E.g.*, § 523(a)(2)(B)(iv); *Boyuka v. White (In re White)*, 128 Fed. Appx. 994, 998 (4th Cir. 2005) (holding that to except a debt from discharge under § 523(a)(2)(A), the movant must show, inter alia, that "the debtor's conduct was with the intention and purpose of deceiving or defrauding the creditor."); 124 Cong. Rec. H11095-96 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978) (stating that § 523(a)(2)(A) was meant to codify current case law that interprets "fraud to mean actual or positive fraud rather than fraud implied by law.") (remarks of Rep. Edwards and Sen. DeConcini). A creditor must establish the requisite intent by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87, (1991).

A creditor may establish the requisite intent to deceive by showing that the debtor acted with a reckless indifference to the truth. *E.g.*, *White*, 128 Fed. Appx. at 998-99 ("A showing of reckless indifference to the truth is sufficient to demonstrate the requisite intent to deceive[;] a debtor will rarely, if ever, admit to acting with an intent to deceive, [thus,] intent may be inferred from the totality of the circumstances."); *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) ("An intent to deceive may be inferred from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation.' Nevertheless, an honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive. Thus, a 'dumb but honest' defendant does not have scienter.") (citations omitted); *Anastas v. American Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1286 (9th Cir. 1996) ("[R]eckless disregard for the truth of a representation satisfies the element that the debtor has made an intentionally false representation in obtaining credit.").

Walters Construction argues that as the president of Cook Heating, the Debtor had a duty to review and sign accurate payroll certification forms, and respond to Walters Construction's and the WHA's letters regarding the HUD audit. By ignoring these duties, Walters Construction equates the Debtor's conduct as a reckless disregard for the truth.

For example, Cook Heating's Statement of Compliance submitted on February 6, 2004, is signed by "Elaine Cook, Secretary." Elaine Cook is the Debtor's mother; she is not the secretary of the corporation – she is an office secretary. Ms. Cook certified that each worker listed in that week's payroll

– 5 –

was paid the requisite amount of fringe benefits. At trial, the Debtor testified that while Cook Heating tried to timely pay its workers their fringe benefits, Cook Heating sometimes fell behind in those payments. In fact, Cook Heating still owes money to the Sheet Metal Workers' Pension Plan, the entity to whom those benefits were paid.[5]  Thus, the Debtor admitted that a portion of Cook Heating's weekly Statements of Compliance were false because those statements certified that benefits were paid when they had not been paid. Not only were some fringe benefits not paid, nearly all of its Statement of Compliance forms indicated that it was paying fringe benefits in cash, when Cook Heating was actually writing checks to the Sheet Metal Workers' Pension Plan for its workers' fringe benefit payments. The Debtor stated that he only reviewed a few of the weekly Statement of Compliance forms, and he freely allowed his office staff to complete and submit the forms.

The Debtor also testified that he received Walters Construction's August 6, 2006 letter informing Cook Heating of the HUD audit that had identified problems with Cook Heating's certified payrolls. Likewise the Debtor received the October 20, 2004 letter from Walters Construction asking that Cook Heating resolve the matter immediately. The Debtor also testified that he received the November 3, 2004 letter from the WHA asking for either documentation of Cook Heating's benefit package or restitution. The Debtor also received the February 8, 2005 notification from the WHA of Cook Heating's back wage liability, detailing the results of the HUD audit, requesting that the Debtor take immediate action, and informing the Debtor that either he or Cook Heating had 30 days to file an appeal of the back wage liability determination before that finding became final. The Debtor completely ignored the two letters from Walters Construction, the letter from the WHA, and the notice from the WHA.

On the other hand, the Debtor stated that he allowed his office staff to submit the weekly Statement of Compliance because he was "busy." Indeed, the Debtor testified that as Cook Heating's financial trouble deepened, he spent more time in the field performing work in an effort to save his company, forcing

---

[5] According to the February 9, 2006 proof of claim submitted by the Sheet Metal Workers' Pension Plan in Cook Heating's bankruptcy, it claims to be owed $68,440 in unpaid fringe benefit contributions from September 1, 2003 to July 1, 2004, $12,548.68 in liquidated damages, and $2,082 in attorney's fees. Subsequent to the trial in this case, both parties consented to the court taking judicial notice of the Sheet Metal Workers' Pension Plan's proof of claim.

-6-

him to delegate more responsibilities to his office staff. Also, the Debtor stated that Cook Heating had almost always checked the box (only one of two options) indicating that fringe benefits were paid in cash. This was the first time that Cook Heating ever had notice that its election of "paid in cash" was incorrect, and the Debtor testified that he believed that he was paying in cash when he submitted a check to the Sheet Metal Workers' Pension Plan for his workers' fringe benefits.

The Debtor also stated that the HUD audit, and the subsequent dunning letters from Walters Construction and the WHA, came at a time when Cook Heating was experiencing financial difficulties and was being pressed for payment from several creditors. The Debtor indicated that he believed that HUD's back wage liability determination was partially in error because he knew that at least a portion of that liability had been paid, and he was attempting to work with the Sheet Metal Workers' Pension Plan to make payments on delinquent fringe benefits. Moreover, the Debtor stated that he believed that he was complying with the Davis-Bacon Act because he was paying his workers between $3.60 and $5.36 per hour in fringe benefits, when the Davis-Bacon Act only required that he pay $2.50 per hour. Additionally, the Debtor testified that Walters Construction was already withholding over $17,000 from Cook Heating for work that Cook Heating had performed at the Hope VI project. If Walters Construction was going to be liable for the non-payment of fringe benefits for Cook Heating's workers, the Debtor believed that the amount owed in unpaid fringe benefits could be offset against the amount that Walters Construction already owed Cook Heating.

In sum, the Debtor testified that, in hindsight, he did not make good decisions regarding his failure to review the Statements of Compliance for accuracy, his failure to respond to Walters Construction's and the WHA's letters requesting action on HUD's audit findings, and his failure to respond to the WHA's back wage liability determination. The Debtor stated that he was "a furnace man," not a businessman. The Debtor acknowledged that his decision to ignore the situation was especially poor considering his belief that Cook Heating had (at least in part) a defense of payment.

Weighing the evidence as a whole, the court finds that Walters Construction has failed to establish by a preponderance of evidence that the Debtor had the requisite intent to deceive to support a claim based on § 523(a)(2). First, the Debtor, as a "furnace man," is not particularly knowledgeable about business administration. *See, e.g.*, *Panhandle Fed. Credit Union v. Black (In re Black)*, No. 05-5853, 2006

–7–

Bankr. LEXIS 2870 at *13 (Bankr. D. Kan. Oct. 18, 2006) ("Although the Court might have questioned the veracity of the testimony that Debtor believed the transaction to be legitimate if Debtor were a sophisticated business person . . . [the] Debtor did not fit this profile. . . . The fact Debtor was baffled by the transaction does not evidence intent to deceive the Credit Union."); *In re Touchard*, 121 B.R. 397, 401-02 (Bankr. D. Utah 1990) (considering the financial sophistication of a debtor, among other factors, in determining if the debtor acted with the intent to deceive); *In re Hall*, 109 B.R. 149, 155-56 (Bankr. W.D. Pa. 1990) (discrediting a "head in the sand" defense to a false loan application when the debtor was a sophisticated, intelligent, corporate executive who was involved in numerous family-owned businesses for over 30 years, and was very much aware of her business affairs). The Debtor's statement that he is not a sophisticated businessman is supported by a review of the Uniform Fringe Benefit Remittance Report that Cook Heating submitted to the Sheet Metal Workers' Pension Plan. Those Reports were handwritten, not typed, some of the numerals used on the Report are difficult to ascertain, and many of the Reports are only partially completed. The Debtor stated that the Hope VI project was his first time working with union labor, and that prior to engaging in the Hope VI project, Cook Heating's business was about 80% residential and 20% light commercial. The Debtor also stated that he had performed work on other public housing projects, where nothing went wrong, and Cook Heating's business practices on the Hope VI project were no different than what it had done on earlier occasions. In short, the Debtor and Cook Heating were not sophisticated, and the Debtor was working with a new set of rules by engaging union labor on the Hope VI project. Under these circumstances, it is not surprising that the Debtor and Cook Heating would make some mistakes.

Second, the Debtor made a credible witness. He answered counsel's questions directly, acknowledged the fact he had made some mistakes, and recognized that he should have handled his supervision of office staff better and responded to HUD's audit findings. The Debtor's testimony was generally consistent with the exhibits, and he did not appear to be attempting to deceive the court or hide his mistakes. Moreover, while not prudent, the Debtor's explanation as to why he chose not to respond to HUD's audit findings, Walters Construction letters, or the WHA notification of back wage liability was believable. The Debtor did not believe that either he or Cook Heating would have to pay twice for those benefits that were already paid, notwithstanding the final nature of the WHA's back wage liability

determination. Likewise, should Walters Construction be liable on the WHA's notification, Walters Construction was already holding over $17,000 in funds that were owed to Cook Heating; thus, the Debtor did not want to see Cook Heating pay more money on Walters Construction's behalf at a time when Walters Construction owed it money, and when Cook Heating had other pressing financial obligations and a limited cash flow. Additionally, the Debtor testified that he was able to negotiate with the Sheet Metal Workers' Pension Plan to allow for back payment of fringe benefits, and he was dealing directly with it rather than with Walters Construction or the WHA. Indeed, Cook Heating was continuing to make payments to the Sheet Metal Workers' Pension Plan until April 2004. The Debtor also testified that he never intended to deceive Walters Construction regarding Cook Heating's payment of its workers' fringe benefits; Walters Construction's and the WHA's letters came at a time when he was just "really stressed out," and was receiving other dunning notices.

Third, Cook Heating was a small, family run operation where rules of procedure that may ordinarily govern in larger business entities were relaxed. The Debtor was the president of Cook Heating. The only other officer was the Debtor's spouse. His mother was the office secretary. Because of the mom and pop nature of Cook Heating, the court does not find it reckless for the Debtor to entrust his office secretary – his own mother – with the task of completing the weekly Statement of Compliance forms. Also, in an attempt to resurrect his failing business, the Debtor testified that he began working more and more in the field, which required him to delegate more of his office work to his staff. Thus, the Debtor's statement that he was too "busy" to review every Statement of Compliance is credible.

On the whole, the court finds that the Debtor did not act prudently, that he may have even acted negligently, but that the Debtor did not act with a reckless disregard for the truth, or with an intent to deceive Walters Construction. *See, e.g.*, *Aespace Am., Inc. v. Ping-Yau Ko (In re Ping-Yau Ko)*, No. 03-2694, 2006 Bankr. LEXIS 3025 at *15 (Bankr. C.D. Cal. Oct. 30, 2006) ("Plaintiff's 'negligent misrepresentation' state court judgment falls short of meeting the . . . standard for nondischargeability under § 523(a)(2)(A), or otherwise."); *Wolf v. McGuire (In Re McGuire)*, 284 B.R. 481, 484 (Bankr. D. Colo. 2002) (stating that the debtor's conduct was negligent and did not rise to the level of being reckless for purposes of § 523(a)(2)).

### III. CONCLUSION

For the above-stated reasons, the court finds that Walters Construction failed to establish the requisite intent necessary to support a cause of action based on 11 U.S.C. § 523(a)(2)(A) or (B). Therefore the court will deny Walters Construction's complaint to except the alleged $17,000 debt from the Debtor's discharge.[6]

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.

---

[6] Given the court's holding, it is not necessary to address the extent of the indebtedness (the Debtor's case is fully administered as a no asset case), or the propriety of the Debtor's setoff defense.